UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff-Respondent, | ) | Case No. 13-cv-1426 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| JOHN HEMPHILL, | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant-Petitioner John Hemphill is currently serving a 90-month sentence for convictions for mail fraud and false impersonation of a federal officer. Hemphill has moved, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence, on the basis that during sentencing, the district judge said Hemphill was an "intelligent individual" without knowing that Hemphill had been evaluated as a child as mildly mentally retarded. For the reasons stated below, Hemphill's § 2255 Motion [32] is denied.

## BACKGROUND

The Seventh Circuit summarized the factual background of this case in its opinion, *United States v. Hemphill*, 447 Fed. Appx. 733 (7th Cir. 2011). In October 2002, Hemphill concocted a "rather elaborate" fraudulent scheme to take possession of certain Illinois properties under the guise that the properties had been seized by the federal government and that Hemphill was the federal government's "receiver." *Id.* at 734. To further his scheme, Hemphill incorporated two companies, United States Receivers Caretakers Association ("USRCA") and United States Mortgage Release Corporation ("USMRC"). *Id.* From 2002 to 2009, Hemphill filed dozens of fraudulent deeds with the Cook County Recorder of Deeds ("CCRD"),

1

transferring properties from the properties' owners to USRCA or USMRC and then selling the properties to unsuspecting third-parties. *Id.* at 734-35.

After receiving complaints about Hemphill, law enforcement began investigating him in 2009. *Id.* at 735. As part of this investigation, an undercover government agent met with Hemphill about purchasing a property that Hemphill did not own. The agent paid Hemphill a down payment, and Hemphill filed a release deed with the CCRD. (Trial Transcript ("Tr.") at 110, 138-44.) After the agent paid the remaining balance, Hemphill signed a special warranty deed for the property and gave the deed to the agent. (*Id.* at 148-51.) Hemphill was subsequently arrested, and a search warrant was executed on Hemphill's office. (*Id.* at 151-52.)

On October 15, 2009, Hemphill was indicted on one count of mail fraud and one count of false impersonation of a federal officer, in violation of 18 U.S.C. §§ 1341 and 912, respectively. On August 16, 2010, Hemphill proceeded to trial, where he represented himself *pro se* with the assistance of stand-by counsel. After a four-day trial, the jury returned a verdict of guilty on both counts.

On January 26, 2011, Hemphill's sentencing hearing was held. Hemphill's stand-by counsel filed a sentencing brief and argued on Hemphill's behalf at the hearing. His counsel objected to the Probation Officer's conclusion that Hemphill's criminal history category was VI, as well as made a number of 18 U.S.C. § 3553 objections. The district judge agreed that Hemphill's criminal history category was overstated and sentenced Hemphill as a criminal history category V instead. (Sentencing Transcript ("S. Tr.") at 27-28, 35.)

During the sentencing hearing, Hemphill's lack of education and lack of sophistication were raised. Specifically, Hemphill's counsel objected to the Probation Officer's recommendation that a "sophisticated means" enhancement be applied to Hemphill's sentence.

The government agreed with Hemphill that this enhancement was not appropriate. The district judge also agreed this enhancement was not appropriate, stating "that although there was considerable activity in order to move forward this process, . . . the means utilized in performing this scheme were anything but sophisticated." (S. Tr. at 17.) Additionally, Hemphill's counsel described Hemphill as "essentially a street – a creature of the streets, and who doesn't have a lot of education, doesn't have a lot of training, certainly doesn't have financial wherewithal." (*Id.* at 40.)

During his allocution, Hemphill apologized to the district judge, stating that "this is way, way over my head. And I know that things that is [sic] going on right now, I'm not educated on them. But I do know a little bit – little things about receivership. So that's why I challenged the court and came to found [sic] out that I don't know a whole lot that I thought I knew." (*Id.* at 43.) He then told the district judge that "I do everything by the book." (*Id.* at 46.)

After Hemphill's allocution, the district judge responded and remarked that Hemphill was attempting "to convince the Court as to the propriety of his efforts to save the neighborhood," but "those attempts were an act at failure because I haven't heard or seen anything that suggest to me that there is one person who has been helped other than yourself." The district judge continued addressing Hemphill, "You talk about trying to do things the right way. I think a person with an ounce of intelligence would know I don't sign my name and put my thumbprint on a document and the name that I sign is not my name but somebody else's name. That's not doing things the right way." (*Id.* at. 46.) The district judge then stated:

> It is clear to the Court, based upon the evidence in this case and even your comments here today that, Mr. Hemphill, you are just a glorified conman who is continuing to try and con people, including the Court today, into believing that you are going to continue with this process once you get out and make sure you do it the right way. You are an intelligent individual. And for you to say that I am a receiver and I am going to come and take your property and give to someone

else because the neighborhood is so bad, let me tell you, based upon what I have heard and seen in this court, the neighborhood is going to be better when you are not in it, because you take advantage of people and the people who can least afford to be taken advantage of.

(*Id.* at 46-37.) The district judge then sentenced Hemphill to concurrent prison terms of 90 months for the mail fraud and 36 months for the false impersonation count. The Seventh Circuit affirmed both Hemphill's conviction and sentence on direct appeal.

While Hemphill's appeal was pending, the Probation Office belatedly received records showing that, in 1984 at age 14 years old, Hemphill had been evaluated as "mildly mentally retarded" and had received special education services at school.[1] (Pet.'s Mem. in Supp. of Mot. at 6, 7.) After the case was remanded to the district court, Hemphill's court-appointed counsel obtained court approval for a neuropsychological evaluation of Hemphill, which was performed by a clinical psychologist in 2013. The evaluation reflected that Hemphill continues to have significant cognitive impairments as an adult. (*Id.* at 8.)[2]

## **LEGAL STANDARD**

Historically, *habeas corpus* relief has been viewed as "an extraordinary relief, 'a bulwark against convictions that violate fundamental fairness.'" *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993) (quoting *Engle v. Isaac*, 456 U.S. 107, 126 (1982)) (other internal citations omitted); *see also Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) (relief under § 2255

---

[1] The Presentence Investigation Report ("PSI"), submitted to the district court, reflected that Hemphill and his mother informed the Probation Officer that Hemphill had received social security disability benefits as a child. Specifically, the PSI stated that Hemphill remembered receiving social security benefits as a child but did not know why. The PSI also stated that Hemphill's mother said that Hemphill had received social security benefits as a result of a mental health evaluation, but that she could not remember any diagnosis from that evaluation. (Pet.'s Mem. in Supp. of Mot., at 5.)

[2] The 2013 evaluation report further stated that Hemphill's current scores "are not inconsistent" with the earlier diagnosis of mental retardation, but "as they are generated at a later age cannot qualify him for this diagnosis." (Gov't's Resp. to Mot. at 8.)

4

is "reserved for extraordinary situations."). Section 2255 allows a prisoner to move to vacate, set aside, or correct his or her sentence if "the sentence was imposed in violation of the Constitution or laws of the United States . . . or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a). The district court must review the record and draw all reasonable inferences in favor of the government. *See Carnine v. United States*, 974 F.2d 924, 928 (7th Cir. 1992).

Convicted defendants have a due process right to a fair sentencing process and to be sentenced on the basis of accurate information. *Welch v. Lane*, 738 F.2d 863, 864-65 (7th Cir. 1984). Claims that a sentence must be set aside because it violates due process because it is based on false information are evaluated under a two-element test set forth in *United States v. Tucker*, 404 U.S. 443 (1972), and *Townsend v. Burke*, 334 U.S. 736 (1948). A petitioner must show both: (1) that information before the sentencing court was inaccurate; and (2) that the sentencing court relied on the misinformation in imposing the sentence. *Welch*, 738 F.2d at 865.

To satisfy the first prong of this test, the petitioner must show that the inaccurate information is "materially untrue." *Townsend*, 334 U.S. at 741. To establish the second prong of actual reliance, the petitioner must show that the sentencing court gave "explicit attention" to the misinformation, "'found[]' its sentence 'at least in part' on it, or [gave] 'specific consideration' to the information before imposing sentence." *Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003) (citing *Tucker*, 404 U.S. at 447).

## ANALYSIS

Hemphill argues that he was denied due process at sentencing because the district judge mischaracterized Hemphill as an "intelligent individual." Hemphill contends that the district judge was unaware of Hemphill's previous diagnosis as mentally retarded and, therefore, relied

5

on false information about Hemphill's cognitive abilities at sentencing. Hemphill further contends that his cognitive impairments could serve as significant mitigation for his sentence and that he should be re-sentenced.

*Inaccurate Information Prong*

Hemphill has not satisfied the first prong of showing that the information before the sentencing court was inaccurate. He has not identified any type of sentencing materials or other evidence that falsely portrayed him as having high intelligence. As noted *supra*, Hemphill's lack of education and unsophisticated fraudulent methods were specifically discussed at the hearing. Indeed, Hemphill's own attorney referred to Hemphill as "a creature of the streets" who had received little education.

Instead, Hemphill's sole focus is on the district judge's comment that Hemphill was an "intelligent individual." This off-handed comment, out of context, is insufficient to establish inaccurate information. Considered in context of the district judge's other statements, it is clear that the judge was reprimanding Hemphill about being a conman after Hemphill just claimed during allocution to have done things "by the book." The district judge also stated at the same time that even "a person with an ounce of intelligence" would know that Hemphill's fraudulent scheme was improper. These comments reflect that, after observing Hemphill for four days during trial and sentencing, the district judge believed Hemphill was smart enough to understand that his actions were wrong. The district judge was expressing his opinion that Hemphill clearly understood his conduct was criminal in nature. Considering the complete record, it is clear the judge was not making a qualitative statement that Hemphill possessed a high IQ or intelligence.

Indeed, this type of opinion statement is markedly different than other types of inaccurate information that can lead to due process challenges, such as where the district court relied on

incorrect information about previous convictions. *See, e.g., Welch*, 738 F.2d 863. Because Hemphill has not shown that there was inaccurate information before the sentencing court, he is not entitled to *habeas* relief.

### *Actual Reliance Prong*

Furthermore, even if Hemphill could demonstrate that the district judge had inaccurate information about Hemphill's intelligence, Hemphill has not shown that the district judge actually relied on that information in sentencing Hemphill. Hemphill has not demonstrated in any way that the district court "gave specific consideration" to a false belief that Hemphill was intelligent or otherwise founded Hemphill's sentence on that false belief. *See Lechner v. Frank*, 341 F.3d at 639. Therefore, Hemphill has not satisfied the second prong necessary for *habeas* relief.

### *Certificate of Appealability*

"A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rules of Appellate Procedure 22. Seventh Circuit Rule 22(b) states: "In a *habeas corpus* proceeding in which detention complained of arises from process issued by a state court, or in a 28 U.S.C. § 2255 proceeding, the applicant cannot take an appeal unless a circuit justice or a district court judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."

To obtain a certificate of appealability under § 2253, a petitioner must demonstrate the denial of a constitutional right. This requires the petitioner to show that reasonable jurists could

debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 120 S. Ct. 1595, 1603–04 (2000). Where the district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.* at 1604. As discussed above, Hemphill has not demonstrated that he was denied due process because he has not shown that the information used in his sentencing was inaccurate or that the district judge relied on the inaccurate information in determining Hemphill's sentence. Therefore, Hemphill has not demonstrated the denial of a constitutional right with respect to his unfair sentencing claim. Accordingly, a certificate of appealability shall not issue.

## **CONCLUSION**

For all the reasons discussed above, Hemphill's 28 U.S.C. § 2255 Motion to vacate, set aside, or correct his sentence is denied.

Date:        9/10/2014

JOHN W. DARRAH
United States District Court Judge